IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK.

COMMENCING 17th NOVEMBER, 1831, AND ENDING 7th JUNE, 1832.

---

THE PEOPLE, on the relation of E. H. Rosekrans, *vs.* W. P. HASKINS, sheriff of Rensselaer.

A rent charge, that is, a rent reserved upon a *lease in fee*, containing a clause to enter and distrain for the rent, is an interest in land which is bound by a judgment, and may be sold on execution as real estate, and forms a specific portion of the premises on which it is charged ; a *rent seek* is not such an interest.

The provisions of the *Revised Statutes*, by which a creditor whose judgment is a *lien* on a *specific portion only* of any lot, tract or parcel of land sold *may redeem the whole*, applies as well to sales made before as since those statutes went into operation.

If a deed has been improvidently executed to the purchaser, and a sheriff is subsequently directed to execute a deed to a redeeming creditor, the court will not direct the first deed to be cancelled, but leave the creditor to en force his rights as he shall be advised.

REDEMPTION of lands sold under execution. On the 24th October, 1829, the sheriff of Renselaer, by virtue of two executions against Amaziah Payn, sold at public vendue a tract of land contining about 200 acres, to S. G. Huntington, for $984,80, being the highest sum bidden for the same. The judgments on which the executions issued were docketed, one on the 23d February, 1823, and the other on the 9th August, 1728. The land sold comprised 125 acres, which in 1806

Nov. 17,

were demised in fee to Amaziah Payn, subject to an annual rent charge, to be paid to the lessor, his heirs and assigns. On the 14th December, 1824, Payne sold and conveyed the tract of 125 acres and two other parcels, containing together about 86 acres, to one W. L. Hull, reserving out of the tract of 125 acres three parcels, containing together about *nine acres of land*, before then sub-let by him to three individuals, with a reservation of rent to be paid to him. On the 24th January, 1831, *fifteen months* after the sale to Huntington, the relator in this case *offered to redeem the land sold;* he exhibited to the sheriff a copy of the docket of a judgment obtained in this court in favor of P. Barringer against Amaziah Payne, on the 26th April, 1826, for $226,29; and assignment of the same to the relator on the 4th November, 1830; and an affidavit of the amount due thereon. He also paid to the sheriff $1108 in redemption of the premises sold, and demanded a deed, which the sheriff refused to execute, and to compel which a mandamus was asked for. In the papers exhibited by the relator, it was not shewn that in the *sub-leases* of the *nine acres* a right to *enter* and *distrain* for the non-payment of rent had been reserved.

The motion was argued by

*M. T. Reynolds,* for the relator.

*B. F. Butler,* for the purchaser.

And at a previous day the following opinion was delivered:

By Mr. Justice NELSON. Barringer's judgment, under which the relator claims the right to redeem, if a lien at all, is so only upon the estate of Payn in the three leases reserved out of the grant to Hull. Under the law of 1820, sess. 43, p. 167, a judgment creditor could not redeem beyond the extent of the *lien* of his judgment. 19 Johns. R. 379. The Revised Statutes, vol. 2d, p. 372, § 53, have altered the law in this respect, and a judgment creditor is now allowed to redeem the entire lot, tract or parcel, if his judgment is a lien on a *specific por-*

*tion.* It is contended by the purchaser that his rights in rela-
tion to the premises in question are to be determined accord-
ing to the law of 1820, as the sale was made and certificate
given to him before the revised statutes went into effect.　The
case of *The People, ex rel. Fleming* v. *Sheriff of Monroe,* 6 Wen-
dell, 326, disposes of this question.　In that case the chief
justice very fully examines the effect and operation of the 5th
section of the repealing act, 2 R. S. 779, which unites the
civil portion of the old and new statutes, and comes to the
conclusion that every act, right, suit, or proceeding, done, ac-
crued or commenced under the old law, remain in full force,
notwithstanding the repeal, but that after the repeal, all fu-
ture proceedings must be governed by the statutes then in
force ; that it confirms all rights accrued under the old
law, but that such rights are to be enforced according to
the new remedy.　To this construction of the 5th section
I fully assent, with this addition, which is probably im-
plied in the opinion just noticed : that the remedy under the
new law is not incompatible with, or destructive of the en-
joyment of the rights accrued under the old.　If so, then I
think the principle, that the grant or confirmation of a right
carries with it as incidental all the means necessary to its en-
joyment would authorize their enforcement under the latter
law.　Besides, the 5th section was intended to restrain and qual-
ify the unconditional repeal in the 1st section.　One of these
qualifications is, that rights accrued or established under the
old law shall remain in full force notwithstanding the repeal.
This virtually preserves the old remedy, if indispensable to
carry into effect the intent and object of this provision.　Thus
far the repeal in the first section is restrained, otherwise, how
could the right be preserved if the new remedy was destruc-
tive of it ?　In the case under consideration, the sale and cer-
tificate gave to the purchaser no right (which was perfect) to
a conveyance of the land.　Payn or his personal representa-
tives, or Hull, or any one who might have obtained a judg-
ment which was a lien on it, might have redeemed and pre-
vented the deed to him.　The purchaser had a perfect right,
according to the law at the time, to the money he had paid,
or the land, and nothing more, and the revised statutes *do not*

ALBANY,
Nov. 1831.

The People
v.
Haskins.

infringe this right. The redemption, therefore, must be according to the revised statutes.

But it is contended that the judgment of Barringer was *not* a lien on any specific portion of the premises sold, and this raises the important question in the case. At common law a judgment, or recognizance in the nature of a judgment, did not bind the lands of the defendant, nor did the execution disturb his possession, as it went only against his goods and chattels and the present profits of the land, or as Lord Coke expresses it, " the corn and like present profits which shall grow upon the land." 2 Bacon's Abr. tit. Execution, 685, 6. 3 Black. Comm. 418. 3 Coke, 12. The statute, 13th Edw. 1, for the benefit of merchants in the case of a *statute merchant*, which was a bond of record duly acknowledged, and in the nature of a judgment, subjected to execution, not only the goods and person, but the lands of the debtor into whose hands soever they came after the acknowledgment. Under this statute, the lands are considered bound from the time of the acknowledgment of the bond or recognizance. During the same parliament, 13th. Edw. 1, the first act also passed, which subjected the *lands* of debtors to execution on a judgment recovered, and gave to the plaintiff his election of two writs, viz. a *fieri facias*, which he had at common law, or a writ on which the sheriff delivered all the goods and chattels of the debtor at an appraised value, and if not sufficient, then a moity of his lands, until the debt was levied out of the use of them. This writ is called an *elegit*, from the choice of two given to the party. The construction given to this statute by the courts in analogy to the statute merchant is, that the moity of the lands of the debtor, at the rendition of the judgment, are bound by the same. See the cases above cited, and Lillington's case, 7 Coke, 131. The *freehold lands and tenements* of the debtor only were bound by these judgments. *Harwood's case*, 8 Coke, ·340 ; 2 Tidd, 850 ; 1 Johns. Cas. 223 ; and any less estate ·was bound only by issuing the execution. A *freehold rent charge*, it seems, is also bound by the judgment or recognizance. In *Lillington's case*, the grantee of a rent charge, ( which was for life) after the acknowledgment of the statute, released to the tenant, by which the rent became extinguish-

ed, yet upon a failure of payment of the judgment it was decided the connusee might extend it, for to this purpose it still continued, for the statute bound all the lands the connusor had at the time of entering into it, and the rent charge was therefore liable into whose hands soever it came. The court there considered the word *lands* in the statute as including all hereditaments extendible. They say that if a man hath judgment to recover his debt or damages, the rent which defendant hath of any estate of freehold is thereby liable, and although after judgment he releases it, the plaintiff shall have execution of a moiety as given by 13th Edw. 1, which by construction of law makes liable all lands that the defendant had at the rendition of judgment, or at any time after. So if A. seised of a *rent charge* binds himself in a statute merchant, this rent is extendible for *lands* which the statute subjects to execution includes all hereditaments extendible, and the connusee may distrain and avow for rent without the attornment of the tenant. 2 Bacon, 699. Co. Inst. 135. Moore, 32, pl. 104. See also 10 Vin. Abr. 545. 2 Cro. Eliz. 742. A rent charge is where the owner of the rent has no future interest, or reversion expectant in the land, 2 Black. Comm. 43, 6 Bacon, 6 ; as where a man by deed makes over his whole estate in fee simple, with a certain rent payable thereout, and *adds a clause of distress.* In this case the distress is not of common right, but by virtue of the clause in the deed, and therefore called a rent charge ; without this cause of distress the rent would be termed *rent seck*, which can only be collected by action. *Rent seck*, cannot be delivered on an elegit, *Walsal* v. *Heath* 2 Cro. Eliz. 656, 2 Tidd. 940, as a bare rent cannot be delivered, *ut liberum tenementum.* The true reason, no doubt, is the one given in the books why an annuity which is like rent seck cannot be delivered in execution, to wit, that it is but a chose in action, the owner not being at liberty to resort to the land to collect it, but to an action. 10 Vin. Abr. 545, (13.) Cro. Jac. 78. Our act of 1813, 1 R. L. 500, was the first statute, I believe, in this state making judgments expressly a lien upon lands. No such provision is contained in the act of 1801, W. and S. ed. 388. The law of 1787, vol. 1. Green. ed. 407 limiting the lien of a judgment in certain cases to the time of

filing the roll, seems to assume the fact of there being a lien, and therefore does not expressly make them such. The law of 1813 uses the terms " lands, tenements and real estate," words of more extensive signification than those used under which it has been repeatedly held a judgment was a lien upon a rent charge. The revised statutes, vol. 2, 359, § 3, have extended the lien by the addition of " chattels real," but limited the provision to judgments rendered " hereafter."

In this case the leases are not before us, and we therefore know nothing of their contents, except from the affidavits. and from them it does not appear that they contain a clause of distress. If they do not, the rent is but rent seck, and not liable to judgment or execution. The 4th Geo. 2, ch. 28, which gave the remedy by distress in case of rent seck, and in effect turned it into a rent charge, has never been enacted in this state. In the papers of the relator it is stated that a *clause of re-entry* in the usual form is embraced in the leases, but this fact is unimportant so far as this question is concerned, unless re-entry had been made, Shep. Touch. 153, 1 Bacon, 658, for until then the interest of Payn would be unchanged. If the rent reserved in the leases had been a rent charge, it would have been bound by the judgments against Payn, for the reason given, that the term *land* includes it, but whether the rent would be deemed in the language of the revised statutes, vol. 2, p. 372, § 53, " a specific portion of the lot, tract or parcel (of land) sold," is a question that does not arise upon the facts in the case, and therefore will not be examined.

As the case stands, the motion must be denied, on the ground that the judgment of Barringer is not a lien upon the leased premises, the rent reserved upon them for aught appearing being rent seck. We cannot presume any special provision in the lease for the purpose of turning it into a rent charge.

Motion for mandamus denied.

The relator, on leave obtained, now renewed his motion, and shewed that in the *sub-leases* was contained *a clause of distress,* and he further shewed that the sheriff had executed a deed to

the *purchaser*, who had subsequently conveyed to persons of the name of J. & T. Howland; and he prayed not only for a mandamus to.the sheriff, directing the execution of a deed to him, but for a rule *vacating* the deeds to the purchaser and to the Messrs. Howland.

ALBANY,
Nov. 1831.

The People
v.
Haskins.

The following opinion was delivered.

By Mr. Justice SUTHERLAND. The opinion delivered by Mr. Justice Nelson states the material question in the case. It establishes, 1. That the provision of the revised statutes, 2 R. S. 372, sect. 53, by which a creditor whose judgment is a lien only on a specific portion of the premises sold may redeem the whole, is applicable to sales made before those statutes went into operation, and of consequence to this case; 2. That a *rent charge*, that is, a rent reserved upon a lease in fee, *with right of re-entry and distress*, is an interest *in land* which is bound by a judgment, and may be sold on execution as real estate. It did not appear upon the motion before Judge Nelson that the leases in this case contained a *clause of distress*, and as that was indispensable, in order to constitute the rent a *rent charge*, upon which a judgment could *be a lien*, the motion was denied upon that ground. It is now shewn that the leases do contain a clause of distress.

If rent of this description is an interest in land upon which a judgment is a lien, and which may be sold upon execution, it is in my opinion a *specific portion of the premises sold* in this case, within the meaning of the 53d section of the R. S. 372, already referred to; and it was properly sold as the land, or Payn's interest therein. Such is believed to have been the uniform practice in this state, and I perceive no substantial objection to it.

So much of the motion, therefore, as asks for a rule commanding the sheriff of the county of Rensselaer to execute a deed to the relator, of the premises mentioned in the certificate of sale, must be granted. The residue of the motion, that the deed given by the sheriff to Huntington, and also the deed given by Huntington to the Howlands, be vacated and set aside, must be denied; we never order a deed to be cancelled,

given under such circumstances. It may be questionable whether the court have authority to make such an order. It is not necessary, in order to enable parties standing in the situation of the relator in this case, to enforce their rights.