## PAYN vs. BEAL.

A *rent* reserved upon a conveyance *in fee* of land, is not subject to the lien of a judgment, nor liable to be sold on execution, though the conveyance contain a clause of distress and a provision for re-entry. The contrary doctrine laid down in *The People* v. *Haskins,* (7 *Wend.* 463,) overruled.

EJECTMENT, tried at the Rensselaer circuit, in April, 1844, before PARKER, C. Judge. The action was brought to recover one and an half acres of land, in Schodack, which the plaintiff claimed in fee. The plaintiff was seized of the premises on and prior to the first day of April, 1815, and on that day he demised the same *in fee* to one Braddum Yale, his heirs and assigns. A rent of $30 per annum was reserved, payable semi-annually, and the lease contained a clause providing for a distress, and for a re-entry in case the rent should be in arrear and no sufficient distress could be found. The plaintiff proved that Yale entered and occupied under the lease until 1826, when he left. This suit was commenced in May term, 1839; and it was shown that the defendant was in possession of a room in the house on the premises at that time. The rent for ten years preceding the first day of April, 1839, was in arrear on that day, and it was proved that there was not sufficient personal property on the premises to pay such rent It appeared on the cross-examination of the plaintiff's witness that the defendant held under one David D. Simmons, who went into possession in the fall of 1838. He hired the premises of William Forkson, for one year from April 1st, 1839. Forkson had been in possession of the Payn farm, of which the premises

leased to Yale and now in question are a part, four or five years. Upon this evidence the plaintiff rested.

The defendant proved that on the 24th day of October, 1829, the sheriff of the county of Rensselaer, by virtue of two several writs of *fi. fa.* issued upon judgments against Payn, the plaintiff in this suit, docketed in the years 1823 and 1828, sold the right and title of Payn to the premises called the Payn farm, containing about two hundred acres, Samuel G. Huntington becoming the purchaser for the sum of $984,80. E. G. Rosekrans, as assignee of another judgment against the plaintiff, within the time for redemption sought to acquire the rights of the purchaser, and pursuant to an order of the court obtained a conveyance from the sheriff as a purchasing creditor, though he had before conveyed to Huntington as the purchaser. The sheriff's deeds were for Payn's right and title to the Payn farm, described by naming the adjoining proprietors, and they did not refer in any way to the lease to Yale, or to the rents reserved therein; and those deeds recited the publication of a notice of the sale of the premises so conveyed.

The circuit judge held that the plaintiff's right and title to the rent reserved in and by the lease to Yale was the subject of levy and sale on execution; that it was not necessary to advertise and sell it as *rent*, and that in this instance it had been legally transferred by virtue of the sale on execution; and he nonsuited the plaintiff, who excepted. He now moves for a new trial on a bill of exceptions.

*N. Hill, Jr. & D. Cady*, for the plaintiff. 1. The rent, being reserved upon a grant in fee, which passed the whole estate to the lessee, subject to be defeated by non-payment of the rent, was not an estate or interest in the land. The lessor had a mere *possibility of reverter*, upon which the judgments were not liens and which could not be sold as real estate. (4 *Kent's Com.* 122 to 125 *Springstein* v. *Schermerhorn,* 12 *John.* 357, 361; *Shep. Touch.* 153.) 2. But if the rent was vendable on execution, it was not advertised and sold as such.

*S. Stevens,* for the defendant, relied upon *The People* v. *Haskins,* (7 *Wend.* 463,) which he maintained determined both questions in favor of the defendant.

*By the Court,* JEWETT, J. The principal inquiry in this case is, whether the rent reserved to the plaintiff in the lease to Yale was bound by the judgments subsequently recovered against the plaintiff. To resolve this it becomes necessary to determine whether the rent was an estate in *lands, tenements or real estate,* within the meaning of the former statute which was in force at that time. (1 *R. L.* 500, § 1.) That statute provided for a lien upon property under that description only, and no lien existed at common law.

In the case of *The People* v. *Haskins,* (7 *Wend.* 463,) this court held that a rent reserved upon a lease in fee containing a clause of distress and of re-entry, was an interest in land which was bound by a judgment; and that it might be sold on execution as real estate.

Rents by the common law might be created either by reservation, by limitation of use, or by grant. When a rent is granted, the rent itself is the subject of the grant; but when it is reserved out of lands, the land is the subject granted, and the rent comes in lieu of the land. (3 *Preston on Abstracts,* 54.) Lands were not originally liable to execution at the suit of a subject, except in judgments against heirs on the bond of their ancestor. (3 *Rep.* 12.) At common law the conusee of a recognizance, or the plaintiff who had recovered judgment for debt or damages was entitled only to two writs of execution. One a writ of *levari facias,* by which the sheriff might levy the corn and other *present* profit which grew upon the land, and the rents payable by the tenants and the beasts levant and conchant upon the land, because in all cases of *levari facias* the land was considered as the debtor; (*Skinner's Rep.* 619; *Plowd. Rep.* 441;) and the other a writ of *fieri facias,* by which the sheriff was to seize the goods and chattels in execution. In addition to these, in actions of trespass *vi et armis,* the law allowed a writ of *capias ad satisfa-*

*ciendum* against the defendant. (2 *Saund. Rep.* 68, *a*, *n.* 1.) Land was first subjected to the execution of a common law judgment or recognizance by the statute of *Westminster* 2*d*, (13 *Edw.* 1, *ch.* 18,) by which it was enacted, "when a debt is recovered or acknowledged in the king's court, or damages awarded, it shall be in the *election* of him who sues for such debt or damages to have a writ of fieri facias unto the sheriff to levy the debt of the *lands* and goods; *or* that the sheriff shall deliver to him all the chattels (saving only his oxen and beasts of his plough) and the one-half of his land until the debt be levied, upon a reasonable price or extent." This writ is called an *elegit*, because the plaintiff or conusee has made *his election* to sue out execution of the land itself, instead of the common law execution of the goods by *fieri facias*. By this writ the sheriff is commanded "that he cause to be delivered to the plaintiff all the goods and chattels in his bailiwick of the said defendant (except his oxen and beasts of his plough) and likewise the one half of all the *lands and tenements* of the defendant in his bailiwick, of which the defendant" "was seized on a certain day or afterwards, upon a reasonable price or extent, to hold to the plaintiff, the goods and chattels, as his proper goods and chattels, and the one-half of the lands and tenements as his freehold to him and his assigns according to the form of the statute, until he shall have thereout fully levied the debt and damages." (*Lilly's Ent.* 571, 578.) Under this writ, if the goods are insufficient, one-half of all the lands which the defendant had at the time the judgment was docketed is liable to be extended, whether his estate therein be in fee, in tail, for life or years. Although the word *lands* is used in the statute, yet it has been adjudged that whatsoever comes under the legal definition of a *tenement* is extendible on an *elegit*—as a reversion, &c. (*Gilbert's Execution*, 38; *Bishop of Bristol's case*, 2 *Leon.* 113.) Upon a principle of construction applied to remedial statutes, one action has been used for another; one thing for another; one place for another; and one person for another; and as an example of one thing being taken for another, it is said, "as an *elegit medietatem tenæ*

*suæ* is given by the statute of Westminster 2d, *chap.* 18; yet by an *elegit* he shall have the moiety of a *rent* by the equity thereof." (*Hill* v. *Grange,* 1 *Plowd.* 178; *Bro. Elegit,* 13, *Exposition* 16.) In *Wootton* v. *Shirt,* (*Cro. Eliz.* 742,) it was held that in general all tenements as well as lands of the defendant might be extended on an *elegit*—as a rent, or rent charge or the like. But a bare rent-seck could not be. (*Heydon's case,* 3 *Coke,* 9.)

Although the statute of *Westminster 2d,* first subjected land to execution on a judgment or recognizance at common law, yet by other statutes lands were subjected to the satisfaction of certain securities created by them, such as statutes merchant, statutes staple, and recognizances in the nature of a statute staple. In the exposition of these statutes it has been held that an estate in fee simple in possession may be extended on a statute or recognizance, or taken by writ of *elegit,* as also all estates in reversion expectant on leases for lives or years. And in the case of an *elegit* the plaintiff shall have a moiety of the reversion and a moiety of the *rent.* (2 *Cruise's Dig. tit.* 14, *Estate by Statute Merchant, &c.* § 58; *Campbell's case,* 1 *Roll. Abr.* 894.) The same principle was affirmed in *Lillington's case,* (7 *Coke,* 38.)

It was by an application of the principle of these authorities that the court in *The People* v. *Haskins* held, that under our statute a rent reserved upon a lease in fee with the right of re-entry and distress, was bound by a judgment and might be sold on execution as real estate. From the best consideration I have been able to give the question, I have come to the conclusion that the case cannot be sustained. It cannot be doubted that an assignment or transfer of the reversion carries with it the right to demand and receive the rent which shall become payable afterwards, unless the rent be expressly reserved. Littleton says that by a grant of the reversion the rent passeth. (§ 228.) And the commentary by Lord Coke, states that "the reason thereof is because the rent is incident to the reversion, and passeth away by the grant of the reversion, as with the superior, without saying *cum pertenentiis."* (1 *Inst.* 151, *b;*

*Shep. Touch.* 89.) And in *Co. Litt.* 215, *b.* it is laid down that " both assignees in deed and assignees in law, shall have the rent, because the rent being reserved of inheritance to him and his heirs, is incident to the reversion and goeth with the same." Noy lays it down as a maxim, that by a grant of the reversion the rent passes. (*Maxims, ch.* 21, *Rents, p.* 41.) So wherever the covenant runs with the estate, and it is passed with or without deed, the assignee either in law or by act of the party shall have the benefit of the covenant. (*Noke* v. *Awder, Cro. Eliz.* 373, 436.) A purchaser at a sheriff's sale of the reversion is considered an assignee in law. (*Spencer's case,* 5 *Coke,* 17.) It is there laid down that a purchaser of a term for years of a house and lot of ground which had been taken in execution and sold by the sheriff, was entitled to the benefit of a covenant contained in the lease on the part of the lessor to repair the house. The resolution is, " and he to whom a lease for years is sold by force of any execution, shall have an action of covenant in such case as a thing annexed to the land, although they come to the term by act in law." The rent is so closely connected with the reversion that without some positive act of the lessor, it is ever considered as following the reversion and belonging to it, until it has actually become payable. Hence if the person entitled to receive the rent survives the day on which it becomes payable and then dies, it will go to his executor or administrator as a part of his personal estate ; but if he die on any day preceding the day of payment, the rent will go to the heir as incident to the reversion and as part of the real estate. (3 *Cruise's Dig. tit.* 28, *Rents, ch.* 1, § 59 ; 2 *R. S.* 83, §§ 6, 8 ; 1 *R. L.* 439, § 18; *id.* 443, § 27 ; 1 *Saund.* 287, *n.* 11 ; 3 *Preston on Abstracts,* 54.) But a rent reserved on a *grant in fee,* or limited by way of use in a conveyance to uses, will be descendible as a new purchase from the person to whom it is reserved or limited. (1 *Inst.* 12, *b ; Watkins on Descents,* 290 ; *Preston on Abstracts,* 54.) And so rent reserved by way of owelty of partition between coparceners, will descend in the same manner that the land in lieu of which it is substituted would have descended. (1 *Inst.* 169, *b.*) A re-

version is the residue of an estate left in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of a particular estate granted or devised. It necessarily assumes that the original owner has not parted with his whole estate or interest in the land, and therefore if he grants land in tail, or for life or years, he has, an interest in the reversion, because " he hath not departed with his whole estate." (*Co. Litt.* 22, *b.*) If A. has only a possibility of re verter, as in the case of a qualified or conditional fee at common law, he has no reversion. (4 *Kent's Com.* 351 ; 2 *Preston on Abstracts*, 83.)

A reversion is a vested interest or estate, inasmuch as the person entitled to it has a fixed right of future enjoyment. In order to acquire a title to rent through a sale on execution, the purchaser must make title to a vested estate in the land out of which it issues. That he may do on the sale and purchase of the land held under a lease or grant for life or years, subject to the payment of such rent. There is no mode, known to our law, to transfer a right to accruing rent reserved on such lease, by sale under an execution, irrespective of a sale of the demised premises. On such sale on execution against the reversioner owning the rent, it passes as an incident to the land, or as a part of it.

Prior to the recovery of the judgments against the plaintiff, he had conveyed the premises to Yale in fee, reserving a rent, with the right of distress in case of non-payment ; and for want of a sufficient distress to satisfy the rent, a further reservation of a right to him, his heirs and assigns, to re-enter upon the premises and again to repossess and enjoy the same as of his former estate. Upon such re-entry the grant was to cease. The grant to Yale being in fee, passed the whole estate which the plaintiff had, subject only to be defeated by a subsequent breach of the condition to pay the rent, and by a re-entry for such breach. Upon the happening of a breach and on a re-entry by the plaintiff the estate was to become void *ab initio*, and the plaintiff would become seized of his original estate in

the same manner as if he had never conveyed it. (2 *Cruise's Dig. tit.* 13, *chap.* 2, § 50.)

. At the time of the sale no breach had occurred, and no re-entry had taken place. The interest of the plaintiff in the land itself was therefore but a mere possibility of an estate. That interest, in my opinion, is neither "lands, tenements or real estate," within the meaning of our statute. (4 *Kent's Comm.* 120 *to* 125 ; *Shep. Touch.* 153 ; *Springstein* v. *Schermerhorn*, 12 *John.* 361.) A lien by judgment therefore could not attach to it, and of course it was not the subject of sale or capable of being conveyed by the sheriff under an execution. The defendant does not claim that Huntington acquired this possibility of reverter, as it is sometimes called in the books, by his purchase at the sheriff's sale ; but he insists that the formal sale and purchase of the land—the corporeal body, out of which the rent issues—passed the title to the rent as land, though the purchaser did not acquire thereby any title to the land itself. It is very clear, as I think it has already been shown, that to enable a rent to pass by a sale on execution of the land out of which it issues, the defendant must have a vested estate in reversion in the thing corporeal, which thing passes to the purchaser. The rent then also passes as an incident thereto, but not as land. Rent is a species of incorporeal hereditament. It is defined to be a certain profit issuing yearly out of lands and tenements corporeal. It issues out of the thing granted, and is. no part of the thing or land itself. (2 *Black. Comm.* 19, 41.) It is collateral to a corporeal hereditament, and a right unconnected with and independent of the possession or enjoyment of any real or corporeal property. (1 *Chitty's Gen. Pr.* 206.)

Although it may be that in a strict legal sense the terms "lands, tenements and real estate," or one of them, may comprehend every thing of a permanent nature that may be holden, and may thus embrace rents, still it seems to me that in the statute concerning judgments and executions, to which I have referred, the legislature used those terms in their popular and usual signification, to denote real property corporeal. The

notice of sale is required to be published in the state paper, where the lands are not *occupied* by or under the defendant, and where they are situated in certain districts of the state; and in all the notices of sale, it is provided that "the lands or tenements to be sold shall be *described* with common certainty, by setting forth *the number of the lot and name of the township in which the same are situate*, if any they have; if not, by some other appropriate description." (1 *R. L.* 505, § 13.)

The sheriff in this case advertised and sold all the estate, right, title and interest of the plaintiff, whereof he was seized or possessed on the day the judgment was docketed, or at any time afterwards, of, in and to a certain *parcel of land*, which is particularly described by naming the adjoining property, and is said to contain about two hundred acres. It is shown that the plaintiff was not on that day or at any time afterwards either seized or possessed of the one and an half acres of land in controversy. He had several years before sold and conveyed it to Yale in fee, reserving, it is true, a certain rent, with the right of distress and of re-entry. He had therefore no vested estate, right or interest in the land, or thing remaining on which the lien by judgment could attach. His interest was merely an incorporeal hereditament. And besides, it is not, as has been observed, now claimed that the title to the one and an half acres of land was acquired by the sale or that it passed by the deed of the sheriff. The position is that the plaintiff's title or interest to the rent was sold, and that it passed to the purchaser or the redeeming creditor by the deed professing to convey the land, although no such interest was indicated in the notice of sale or in the conveyance. To allow such an effect to be given to such proceedings would, in my opinion, be intolerable. But my conclusions are, first, that rent reserved on a lease in fee is neither lands, tenements or real estate, within the meaning of the statute authorizing the sale of lands on execution, although in England it is extendible on the writ of *elegit;* and second, if it was an interest subject to the lien by judgment and sale under execution, it was not, in this instance, sold or conveyed in such a manner as to pass any interest to the pur

chaser. The plaintiff was not therefore legally divested of his title to the rent, for the non-payment of which he prosecuted this action of ejectment.

New trial granted.