Sheridan v. House.

## SHERIDAN v. HOUSE.

December, 1868.

The uncertainty which makes a remainder contingent is uncertainty as to who will take at any given time, if the precedent estate should then terminate. If there are persons in being who would be entitled to take if the precedent estate should presently determine, their interest is a vested future estate, under the revised statutes, notwithstanding that it may be liable to be defeated,—*e. g.*, by the death of such a person, before the precedent estate actually determines.*

A vested estate in remainder, although it be liable to be defeated by a subsequent event, is a legal estate, assignable and subject to sale on execution. †

Under a deed of lands to A. for life, and after his death, then to his heirs and assigns for ever, the children of A. during his life have a vested future estate in remainder, which is not made contingent by the fact that it is liable to be defeated or modified by death of any of them, or the birth of other children, during his life. ‡

The doctrine of estoppel by warranty applied. §

---

* Compare Moore *v.* Littel, 41 *N. Y.* 66 ; where this decision is explained as founded on the provisions of the revised statutes. S. P., Manice *v.* Manice, 43 *N. Y.* 303 ; modifying 1 *Lans.* 348. See also Rome Exchange Bank *v.* Eames, pp. 83, 98 of this vol. This remainder is an estate of which the remainder-man's wife is dowable. House *v.* Jackson, 50 *N. Y.* 161.

† And so is a reversion, though contingent or defeasible. Woodgate *v.* Fleet, 44 *N. Y.* 1 ; S. C., *Abb. Pr. N. S.* And even if contingent, the remainder would be alienable. Moore *v.* Littel, 41 *N. Y.* 66. See also Stover *v.* Eycleshimer, in this volume.

The case of Carmichael *v.* Carmichael, vol. 1, p. 309 of this series, is not in substance inconsistent with this case, although its language does not pursue the distinction here pointed out, for in that case the child under whom the plaintiff claimed actually died during the life estate. Compare Livingston *v.* Greene, 52 *N. Y.* 118 ; affirming 6 *Lans.* 50.

‡ As to the different effect in case of a remainder given to "the children " instead of to the heirs of A, see Sherman *v.* Sherman, 3 *Barb.*

§ Approved in Moore *v.* Littel, 41 *N. Y.* 66.

Bernard Sheridan and Amanda M. House submitted a controversy for the decision of the supreme court, without action, arising on these facts. In 1832 Samuel Jackson conveyed land to his son John, "for and during his natural life, and after his death, then to his heirs and their assigns forever." The deed contained a covenant for further assuring the title to the premises to the heirs of John Jackson, " after his natural life," and the grantor warranted the premises to John Jackson, "for and during his natural life," and then to his heirs and their assigns.

John Jackson then had thirteen children. One of them died prior to 1844, and in that year John Jackson executed a deed purporting to convey the whole land to his twelve surviving children, describing them as his children and heirs presumptive. One of these children died before 1848, and in that year John Jackson and wife executed a deed, with full covenants, purporting to convey the whole farm to his eleven surviving children, of whom Richard Jackson is one.

In 1849, the grantees in the last mentioned deed undertook to partition among themselves the whole tract conveyed by Samuel Jackson, and executed two sets of partition deeds, the first of which was in question in Moore *v.* Littel, 40 *Barb.* 488. The second set of partition deeds is that in question in this action.

By these deeds the premises in question were conveyed to Richard Jackson by his surviving brothers and sisters, with covenants for quiet enjoyment to him as against the grantors, their heirs and assigns.

In September, 1856, the sheriff sold the estate of Richard

385 ; Heywood *v.* Hassall, 2 *Rich. So. Car.* 510 ; Thompson *v.* Luddington, 104 *Mass.* 193 ; Prowitt *v.* Rodman, 37 *N. Y.* 42. To "heirs of the body." Lemarks *v.* Glover, 1 *Rich. Eq.* 141. To "heirs," Heard *v.* Horton, 2 *Den.* 165 ; Vanorsdall *v.* Vandeventer, 51 *Barb.* 137 ; Feltman *v.* Butts, 8 *Bush Ky.* 115 ; Campbell *v.* Rawdon, 18 *N. Y.* 412 ; Kingsbury *v.* Rapelye, 3 *Edw.* 1, 9 ; Rogers *v.* Rogers, 3 *Wend.* 503 ; Scott *v.* Guernsey, 48 *N. Y.* 106 ; affirming 60 *Barb.* 163 ; Conklin *v.* Conklin, 3 *Sandf. Ch.* 64 ;. Bundy *v.* Bundy, 38 *N. Y.* 410 ; affirming 47 *Barb.* 135 ; Kiah *v.* Grenier, 1 *Supreme Ct. R.* 388.

Whether the fact that the gift is in trust affects the vesting, see Knox *v.* Jones, 47 *N. Y.* 389 ; Van Wyck *v.* Bloodgood, 1 *Bradf.* 154, 175.

Jackson, on execution, and the purchaser conveyed to the defendant, who claimed under this sheriff's sale. Subsequently and in 1861, John Jackson died. One of the eleven children, Fanny, had died before him, leaving an infant child. After John Jackson's death, his children effected a partition by an action, to which, however, the defendant was not made a party; and the judgment in that action made actual partition allotting the lands in controversy in the present proceeding to the plaintiff. One share was also allotted to the child of Fanny, deceased.

*The supreme court* held that the children of John Jackson had a contingent estate in remainder during his lifetime, and should this estate be deemed alienable, it could not be sold on execution, for the statute as to judgments and executions could not be extended to future estates in expectancy.

*D. P. Barnard,* for the appellant.

*G. W. Paine,* for the respondent.

GROVER, J. [delivered an opinion to the effect that as during the father's lifetime it was uncertain which, if any of the children would survive their father, and therefore uncertain which, if any, of the children would acquire any estate in the land, the remainder limited by the deed from Samuel to John, was therefore a contingent remainder, and could vest in no one until the death of John, by which event his heirs would be ascertained, and the remainder vest.

And that since, under the code as well as by the revised statutes, nothing can be sold upon execution as real estate, except a legal estate therein, the children of John Jackson had no title during his lifetime, which could be thus sold, except his life estate conveyed by him to them. The learned judge then proceeded as follows:]

It is clear that neither of these grantors, [the parties to the partition] nor any person claiming under them, by title derived subsequent to their conveyance to Richard, could assert, as against him or those claiming under him, any title to the land in question. They would be precluded from so doing

by the covenant of warranty in the deed to Richard. The title they acquired upon the death of John Jackson by the operation of this covenant inured to and vested in Richard Jackson and his grantees. This is the result of the application of the unquestioned rule, that a title subsequently acquired by one who has granted the land with covenant of warranty inures to the benefit of his grantee. Whether this principle is based upon an estoppel imposed upon the grantor by reason of his covenant, or a rule adopted to avoid circuity of action, has been discussed by counsel, but both concede the rule.* I am unable to perceive any difference in the present case, whichever may be the true reason. This covenant of the children of John Jackson in the conveyance to Richard, ran with the land, and had not been broken in 1856, at the time of the sale and conveyance by the sheriff, under which the defendant claims. It then constituted a part of Richard Jackson's title to the land, and passed to the purchaser at a sale by the sheriff, upon an execution issued upon a judgment against him. Sweet *v.* Greene, 1 *Paige,* 473; Kellogg *v.* Wood, 4 *Id.* 578. This covenant, therefore, inures to the benefit of the defendant, and makes her title perfect to nine-elevenths of the land in question. As to the one-eleventh which vested in the infant child of the grantor that died, this reasoning will not apply. That child took the eleventh under the deed from Samuel to John Jackson, and not as heir of his mother,—consequently her warranty is not binding upon him. There is nothing to prevent his asserting his title to one-eleventh of the land in question; at any rate, the defendant has not acquired his interest.

The further question must be determined, whether the plaintiff has acquired it. It appears from the case that after the death of John Jackson, a partition was made by action between his heirs, to which this infant child was a party, by which the land in question was adjudged to Richard Jackson. This judgment would, while in force, effect a transfer of the interest of this child in such lands to Richard; and it, together with the eleventh, acquired by him upon the death of John

---

* Compare Moore *v.* Littel, 41 *N. Y.* 66.

Jackson, became vested in the plaintiff by virtue of the sheriff's sale to him made after the happening of these events.

It is claimed by the plaintiff's counsel that the entire partition made by the children during the life of John Jackson, and the conveyances made to effectuate it, became void by reason of the death of one of the children during his life, and the acquisition of one-eleventh by the infant, who was not bound by such partition and the conveyances. It is true that the infant was not bound, but this did not at all impair the validity of the partition or the conveyances as to the others. They were bound, and none of them could claim any interest in any parcel previously conveyed with warranty. The right of each acquired at the death of John, at once vested in the grantees.

It follows, that the plaintiff is entitled to judgment for two-elevenths, and the defendant for nine-elevenths, of the land in question.

The judgment of the supreme court should be modified accordingly.

WOODRUFF, J., expressed his views as follows:

It is not questioned, that, by the grant made in 1832, by Samuel Jackson to John Jackson, for and during his natural life, and after his death, then to his heirs and their assigns forever, the immediate grantee took an estate for life only, and that a remainder in fee was limited to such persons as were, at his death, his heirs at law.

Nor is it questioned that by the conveyance of John Jackson to his children, they acquired, as tenants in common, each an estate for his life in one undivided eleventh part of the land, and that the limitation in remainder gave them, as his heirs presumptive, an estate, interest or expectation, which at his death, they being still alive, would become in them severally an absolute fee.

If that estate, interest or expectation was alienable, then the deed of partition executed by the eleven children operated to place Richard Jackson (one of their number) in the same relation to the lots assigned and conveyed to him in severalty, in which he was before that deed, to the undivi-

ded one-eleventh of the whole property; that is to say, he held an estate for the life of John Jackson in the lots so allotted and conveyed to him in severalty, and he would be entitled to the fee of each one-eleventh part thereof, provided, in respect to each eleventh, the grantor thereof should survive John Jackson.

The partition deed was something more than a release. Miller *v.* Emans, 19 *N. Y.* 384, 388. As between tenants in common it would operate as a grant; it granted with covenants for quiet enjoyment.

True, if he, or either of his grantors in partition, died before John Jackson, that might defeat the title to the one-eleventh purporting to belong to, or be conveyed by, the one so dying, but that is all.

The technical inquiry as to what, and between whom, a mere release at the common law may operate, is not material; here were words of grant and conveyance, and if the grantors had an estate or interest which was alienable—beyond their interest for the life of John Jackson—then this partition deed operated to convey it. The parties were in possession by virtue of the estate *pur autre vie.* They each held the relation to him in which, if they survived him, their estate would be a fee simple in one-eleventh each, and if that fact gave them an alienable estate or interest, no rule of law, technical or otherwise, forbade that their conveyance to one of the tenants in common having a like estate or interest, and being in possession, should be effectual.

On the other hand, if the several grantors in that deed had no estate or interest in the land which was alienable, it conveyed nothing, and considering that deed simply as a conveyance, the defendant here has no estate in the lots, because the estate which she claims was derived from a conveyance to her, or to her grantor, before the death of John Jackson. Whether that deed operated as an estoppel, so as to assure to Richard Jackson the fee, when in fact the grantors did survive John Jackson, and thus assured to her the title which they had proposed to convey, I shall not consider.

I prefer to rest my conclusions upon the answer which should be given to the question whether the children of John

Jackson had, before his decease, an alienable interest or estate in the premises, and by this to test the effect of the partition deed and the validity of the defendant's title. And in my opinion the consideration of this question will also determine whether, if alienable, the interest or estate of Richard was subject to levy and sale upon execution against his property.

The circumstances of the present title would not at the common law have presented the question. The abrogation of the rule in Shelley's case has created a state of things which at the common law could not exist; thus by the common law under the rule in Shelley's case, a grant to A. for life with remainder to his heirs, gave to A. a fee; no question under the law of remainders could therefore arise under such a grant. And that is the case now before us in which Samuel Jackson conveyed to John Jackson for life with remainder to his heirs. On the other hand, a grant to A. for life with remainder to the heirs of B. did present a case to which the law of remainders was of course applicable.

In considering the effect of the grant under consideration, made since the rule in Shelley's case was abrogated, we may seek for an analogy in the example last named, to wit, a grant to A. for life with remainder to the heirs of B.

In such case the limitation over to the heirs of B. is by the common law wholly contingent. It is not only impossible during the life of B. to say who will be his heirs, and hence, who will be entitled to claim under the limitation, but if B. is living at the death of A., the remainder over will wholly fail, because it cannot take effect at the expiration of the precedent freehold estate upon which it is limited. This last result is now prevented by our revised statutes (1 *R. S.* 725, § 34), and therefore the limitation over is operative, and whenever B. dies it will take effect for the benefit of those who may be his heirs. In such case, however, so long as B. lives (A. being also living) there can be no vested estate in remainder under our statutes, because there are no persons in being who would have an immediate right to the possession of the land upon the ceasing of the precedent estate; that is, if A. were to die to-day, it would still be uncertain who are the heirs of B., and, therefore, there is no one who under the grant is entitled to the possession.

But now suppose B. dies, then the estate would vest, and for the reason that there are now persons in being, who, if A. dies. to-day, will be entitled to immediate possession. Whether the estate or interest can be defeated by the death of such persons, or by any other future event or not, their interest is vested according to the very terms of our statute.

It is this precise alternation of circumstances which furnishes examples within the contemplation of our statute in its definition of a "vested future estate" and a "contingent future estate."

1. An estate is vested where there is a person in being who will take if the precedent estate then terminates.

2. An estate is contingent while the person to whom . . . it is limited is uncertain,—*i. e.*, while it is uncertain who will take if the precedent estate then terminates.

One definition is the converse of the other, and they are to be read together.

In the case supposed, then, on the death of B. (A. being still alive), the heirs of B. are in a condition to take if A. should then die, and their estate is, by the terms of the statute, a future vested estate.

This, in my judgment, illustrates the new case made by our statute abrogating the rule in Shelley's case.

Thus John Jackson took a life estate; and every child of his, bearing to him such relation, that, at any moment, he would, if John Jackson then died, be entitled to immediate possession, and to hold in fee, had a "vested future estate" under our statute. It was vested, because by the death of John Jackson the precedent estate terminates, and such child, then in being, becomes *eo instanti* entitled to immediate possession, which is the precise character of one who in the language of our statute has a future vested estate.

This vested estate might be defeated, because such child might die before his father; but the statute has, nevertheless, made his estate a vested estate, notwithstanding the grant under which he claims has annexed a further condition which may defeat it.

In short, the statute has made this remainder (although its beneficial enjoyment depends upon the condition that he sur-

vives his father), a vested remainder liable to be defeated by a condition subsequent.

Such an estate is, in its nature, devisable, descendible and alienable. 1 *R. S.* 725, § 35. This is made a general rule, going much farther, and embracing all expectant estates. In this particular case, the death of the party in whom it is vested, before the termination of the precedent estate, would defeat it, but this does not change its legal character; it is still a vested estate, although death may defeat it. It is, therefore, alienable, subject to that contingency, and the deed of partition was therefore inoperative.

The question remains, could this estate, vested in interest, but liable to be defeated by the death of the person to whom it was limited, be sold under execution?

Our statutes declaring the lien of judgments, and authorizing sales by virtue of execution, apply to "lands, tenements, real estate and chattels real." 2 *R. S.* 359, § 3; 363, § 2; 367, § 24, *et seq.;* 373, § 61, *et seq.*

If the words "lands or real estate" embrace such an estate as that in question, then it was subject to sale on execution, and the defendant acquired title, defeasible as to any share of one-eleventh, by the death of one of the eleven children of John Jackson before his decease, and actually defeated as to the one-eleventh conveyed to Richard Jackson by his sister, Fanny Baldwin, who died before her father.

Concede that a possibility of reverter, as in 4 *Den.* 412, a naked possibility, as in Edwards *v.* Varick, 5 *Id.* 664, or a merely equitable interest, trustees being in possession, holding the legal title, as in Brewster *v.* Striker, 2 *N. Y.* 19; or other purely equitable interest, unaccompanied by possession, as in Sage *v.* Cartwright, 9 *Id.* 49, or a contingent remainder, as in Striker *v.* Mott, 28 *Id.* 82, cannot be sold on execution. This is far short of holding that a vested estate in remainder, only liable to be defeated by a subsequent event, may not be.

The subject of sale here was an estate in the land, a legal estate, vested in interest by the very terms of the statute, and alienable by the owner thereof; this is "*real estate,*" and by such name is subject to levy and sale.

For these reasons, I think the judgment of the supreme court must be reversed.

The appellant appears, by the pleadings, to claim but ten-elevenths of the premises, and seems to concede that the death of Fanny Baldwin defeated her title to one-eleventh of the premises. This is clearly so at law; and it is not claimed that there are any equities arising out of the partition deeds which inure to the benefit of the defendant, to make her purchase effectual as to that one-eleventh.

The judgment should be reversed, and judgment ordered affirming the title of the defendant to ten-elevenths, and of the plaintiff to one-eleventh part of the premises in fee.

A majority of the judges concurred in this opinion.

Judgment reversed, and judgment ordered for defendant for ten-elevenths of the premises, and for the plaintiff for one-eleventh, without costs.