## Jackson, *ex dem.* Reeves, *vs.* Topping.

Where in a deed by a parent to his child, reserving a maintenance to himself, and requiring the payment of his debts, was contained a *condition* giving a right of re-entry to the grantor, in case the grantee neglected to pay such debts, *and* suffered the grantor to be put to cost, trouble or expense, on account of the same: *it was held*, that after the decease of the grantor, the neglect to pay a debt due by him, though not presented until after his decease, worked a forfeiture of the estate; and in an action of ejectment, another of the children of the grantor who presented such demand, was held entitled to recover his share of the estate as one of the heirs at law for a breach of the condition, although the grantor had not been put to any cost, trouble or expense on account of the debt, that part of the condition being adjudged operative only during the life of the grantor. The grammatical sense of words is not adhered to in the construction of either a deed or will, where a contrary intent is apparent; and to give effect to the intention of parties, the word *and* may be read *or*. Where a grantor has a right to enter for condition broken, his heir, although not expressly named, may avail himself of the covenant after the decease of the ancestor.

THIS was an action of ejectment, tried at the Suffolk circuit, in June, 1827, before the Hon. OGDEN EDWARDS, one of the circuit judges. The lessor of the plaintiff, as one of the children and heirs at law of David Reeves, sen. claimed to recover the one fourth of certain premises conveyed by his father to his brother David Reeves, jun. by deed bearing date 23d March, 1821, in the possession of the defendant, relying upon a forfeiture of the estate by a breach of a condition contained in the deed as the ground of his recovery.

The deed from D. Reeves, senior, to D. Reeves, junior, contains a recital, that the grantor, by reason of age and infirmity, is not capable of attending to his estate and affairs, and therefore has agreed to give all his real property to his son, the grantee, so that he shall pay the debts of his father, and afford him a maintenance. The grantor then, in order to carry the agreement into effect, and in consideration of natural love and affection, and of the provisoes, covenants, and conditions in the deed contained to be performed by the grantee, conveyed to the grantee in fee, all and singular his lands, &c. The grantee covenants that he shall and will pay all debts, &c. outstanding against the grantor, and will keep harmless and indemnified the grantor from all such debts, &c. and from all actions, suits and damages that may arise

from the non-payment thereof; and that the grantee shall and will provide the grantor and his wife a suitable and comfortable maintenance. Then follows a *condition*, that if the grantee shall neglect or refuse to pay and fulfil all the conditions and covenants contained in the deed, *and* shall suffer the grantor to be put to any cost, trouble or expense, on account of the same, or shall neglect or refuse to provide for him a maintenance, in the manner specified in the deed, that then, in all, or either, or any of the cases aforesaid, it shall and may be lawful, to and for the grantor, all and singular the premises by the said conveyance granted, to take, re-possess and enjoy, as in his former estate. The grantee entered, and remained in possession of the premises during the lifetime of his father, (who died within two years after the date of the conveyance,) and until the 9th July, 1823, when he conveyed the same to the defendant in fee.

After the death of D. Reeves, senior, and previous to the conveyance to the defendant, Apollos Reeves, the lessor of the plaintiff, presented to D. Reeves, junior, for payment, sundry demands against their late father, and against D. Reeves, junior, himself. Amongst the demands against D. Reeves, senior, was a promissory note, purporting to have been given by him to the lessor of the plaintiff, for $550, bearing date 6th August, 1817. D. Reeves, junior, alleged that some of the demands were unfounded and others paid; and amongst those alleged to be paid, was the note for $550. The parties, on the 8th April, 1823, submitted their differences to arbitration, and entered into bonds, by which they submitted all manner of accounts, bills, bonds, specialties, notes, quarrels, controversies, damages and demands whatsoever, to the arbitrament of the persons chosen to decide between them. The arbitrators on the same day awarded, that D. Reeves, junior, should pay unto the lessor of the plaintiff $650, on the 8th June, then next, and that the parties should mutually execute to each other a general release of all controversies, debts, dues and demands whatsoever. One of the arbitrators testified, that the arbitrators rejected all the demands of

ALBANY,
Oct. 1828.

Jackson
v.
Topping.

the lessor of the plaintiff, except the note above mentioned, which they allowed, and which was the foundation of the award, and the only ground on which the arbitrators proceeded ; that the lessor of the plaintiff did not, before them, set up any claim to the premises in question, as one of the heirs at law of D. Reeves, senior, nor was the title to the premises, as between the brothers, or in any other way, then drawn in question, or passed upon by the arbitrators. The note given by D. Reeves, senior, was produced in evidence, as also the award of the arbitrators, although objected to as inadmissible against the defendant, he not being a party to the submission. It further appeared, that in pursuance of the award, the lessor of the plaintiff, on the 9th April, 1823, executed a release to D. Reeves, junior, of all claims, demands and dues ; that he brought an action against D. Reeves, junior, on the award, and recovered judgment against him by default, in February, 1824. There was no proof that this judgment had since been paid.

On this evidence, the plaintiff insisted, that the neglect of D. Reeves, junior, to satisfy the demand due to the lessor of the plaintiff, was a breach of the condition contained in the deed from D. Reeves, senior, and a forfeiture of the estate thereby granted, and consequently the heirs of D. Reeves, senior, had a right to re-enter on the premises. The defendant contended that the estate was not forfeited, 1. Because there was not sufficient evidence of the existence of a debt due from D. Reeves, senior, to the lessor of the plaintiff ; 2. Because it had not been shewn, that D. Reeves, senior, had been put to any trouble or charge on account of that debt ; 3. That if there was a breach of the condition, it had been waived by the submission to arbitration, and by the proceeding against D. Reeves, junior, personally, on the award ; and 4. That the release executed by D. Reeves, junior, was a bar to this action. A verdict was taken for the plaintiff, subject to the opinion of this court.

*D. Robert*, for plaintiff. The only question relative to the breach of the condition, is, whether the neglect of payment

relied on to produce a forfeiture of the estate, ought not to have happened in the lifetime of the grantor, and he subjected to costs, trouble or expense. On the part of the plaintiff, it is contended that a neglect to pay the debts of the testator produces the forfeiture, whether such neglect was during the lifetime of the grantor or since his death. The grantor intended his debts should be paid. It was one of the principal objects of the grant, and so stated in the conveyance. The right of re-entry is given by the condition, on the happening of all, or any, or either of the cases specified in the conveyance, to wit, the failure to pay the debts, &c. &c. The only possible ground for questioning this intention, is the use of the copulative conjunction *and*, instead of the disjunctive *or ;* from which it may be argued, that it was not intended that the estate should revert, unless the grantor was put to costs, in consequence of the neglect of the grantee to pay the debts. But the court will not support this construction, as it would be inconsistent with the general tenor and scope of the instrument, and defeat the obvious and declared intention of the grantor. (6 *Johns. R. 54.*)

The indebtedness of the grantor was fully and conclusively shewn. The note was produced on the trial. The liability of the grantee to pay the amount was settled by the award of the arbitrators, whilst the title remained in the grantee, and before he transferred the possession. The decision of the arbitrators is conclusive, and binding upon the defendant, who derived his title from the grantee. (1 *Starkie's Ev. part* 2, *p.* 192, 194.) The submission and award are equivalent to an admission of the existence of the debt, and being made by a party in possession, is binding upon the defendant claiming under him. (4 *Johns. R.* 230.)

Neither the submission, nor the suit on the award, destroyed the plaintiff's right of entry. There was no breach of the condition, until the debt was ascertained, and the time of payment directed by the award had expired. The debt was not ascertained until the date of the award, which was on the 8th April, 1823, and the time of payment was the 8th June. The submission, therefore, being antecedent to the breach of the

condition, could not affect the right of entry, otherwise than as furnishing evidence of that right. The suit on the award, was an attempt to collect the amount adjudged; but failing in obtaining satisfaction, the lessor of the plaintiff had a right to pursue his remedy by this action.

*S. B. Strong*, for defendant. A forfeiture could not accrue, unless there was not only a neglect to pay a debt of the grantor, but he subjected to costs, trouble or expense in consequence. The debt, in this case, was not demanded until after the decease of the grantor; of course, the latter event could not happen. It is not denied, on the other side, that, according to the grammatical construction of the condition, the event of costs, trouble or expense, must happen to create a forfeiture. Why then should it not prevail? Courts formerly were very strict in adhering to the literal construction of deeds : (2 *Vernon*, 388 ; 2 *Str.* 1175 ; 3 *Atkyns*, 193 ; 1 *Wils.* 140 ; 3 *D. & E.* 470 ;) recently they have departed from this strictness, but they have done so in cases arising on wills ; and this court, in 6 *Johns. R.* 58, are cautious in confining the rule to wills. In the construction of deeds, courts adhere more closely to the grammatical meaning of words, especially when the words may create a forfeiture of the estate. Restrictions on the title to real estate are generally odious in the law, and ought not to be favored. (*Shep. Touch.* 133. 4 *Leon.* 241. *Co. Litt.* 219, b. *Litt. R.* 128.) In no instance has one word been substituted for another, unless a strict grammatical construction would counteract the clear and manifest intention of the parties, or cause injustice. A right of re-entry was not necessary to be reserved in this case, to secure the payment of debts, though it might be proper for the protection of the grantor. The conveyance to the grantee, for the considerations specified, did not destroy the lien of creditors upon the land. The whole scope of the condition shews, that it was only for his own comfort and protection that the grantor provided. The right of entry is reserved to himself, not to his heirs : he is to re-possess and enjoy as in his former estate. The grantor may well have intended that his grantee should pay his debts without

subjecting him to a forfeiture for non-payment, unless he himself was damnified. Again; the construction the defendant contends for, *can injure no one*. It could not injure the grantor; for the moment he was put to costs, trouble or expense, the estate was forfeited : nor his heirs; for if they did not inherit property from their father, they were not liable to his debts; and if they did, and were compelled to pay debts of their ancestor, they were entitled to claim substitution in the place of the creditors : nor creditors; for by accepting the conveyance, the grantor is liable to them, either at law or in equity. What, then, could be the inducement to provide for the forfeiture of the estate, simply for the neglect in paying debts, when such provision was not necessary for the protection of the grantor, his heirs, or his creditors? According to the construction contended for on the other side, the grantee would not have had the power to alien the land, after the decease of the grantor; for if, at any time subsequent to the purchase, a debt of the grantor should be demanded of the grantee, and he should neglect to pay the same, the estate of the purchaser would be forfeited, though the debt might be of the most trifling amount, and the purchaser totally ignorant of the transaction.

The evidence adduced was insufficient to shew a subsisting debt. The production of the note, as between maker and payee, would undoubtedly be sufficient; but not so in this case : the grantee was bound to pay the debts of the grantor; but it was incumbent on the creditor to shew that this was a debt, by shewing the consideration. Nor was the award evidence of indebtedness against the defendant : a judgment of a court of record would have been; but the defendant was not a party to the submission, and therefore not bound by it.

The lessor of the plaintiff, by accepting the sealed award of the arbitrators, extinguished the simple contract debt; (2 *Johns. C.* 185; 6 *Co.* 44, *l.*; *Yelv.* 38;) the release extinguished the original demand against the grantor; and the sum due on the award was the individual debt of the grantee, which was sought to be enforced against him by action.

ALBANY,
Oct. 1828.

Jackson
v.
Topping.

*By the Court,* WOODWORTH, J.    It appears to me, that the material question to be considered in this case is, whether, in order to constitute a forfeiture, there must be both a refusal to pay the debts, and proof that the grantor was put to costs, trouble or expense.    The remaining questions are not attended with difficulty.    In the first place, here was a debt claimed to be due from the grantor, which was disputed and payment refused.    It cannot be the fair construction of the covenant, to deny the right of questioning the justice of the demand ; consequently, the grantee had a right to insist that the demand be established.    The parties selected the forum, and submitted to arbitrators.    They adjudged the note to be a valid existing demand, to the amount of $650. After this was done, the grantee, according to the plain intent of the covenant, ought to have paid ; for it was no longer competent to deny the validity of the debt.    It was not pretended that payment was then, or at any subsequent period made.    If this had been relied on, it was the duty of the grantee, or those who represented him, to have established the fact ; but they have not done so.    Here, then, so far as depended on a refusal or neglect to pay, the condition was broken.    The lessor had, then, his election, either to insist on a forfeiture, (provided non-payment merely was a sufficient ground,) or to waive that remedy until an attempt was made to compel payment against the grantee by process of law, founded on the award.    The latter was elected, and judgment recovered.    No execution appears to have been issued.    Why there were no further proceedings after judgment, is not stated : nor is it material ; for the neglect or refusal to pay, which existed at the time the award was made, continued when the judgment was rendered.    The lessor, then, elected to pursue the other remedy, which is the present action.    The grantee of the father having conveyed to the defendant, the suit is necessarily against him.    If enough has been shewn to entitle the lessor to recover, had the first grantee continued in possession, it is sufficient as against the defendant.    He succeeded to the rights of his grantor, and no more.    He represents him ; and for the purpose of this suit, stands in his place.    In law, there is a privity of estate

between them ; and if there has been a forfeiture, it cannot be defeated by a transmission of the title from one to the other. This was an estate upon condition. It cannot be urged that it is even a hard case against the defendant ; for he purchased with full knowledge of the condition ; or, if not, it behoved him to inquire and examine the title before he purchased. Neither is there any doubt, that on a covenant for the grantor to enter for condition broken, his heir, after the death of his ancestor, may avail himself of the covenant, although not expressly named. The doctrine is laid down in *Cruise, tit. Estate on Cond. ch. 1, s. 17, Bacon, tit. Cond. E.*

Having thus disposed of the minor questions, I will briefly consider the legal effect and operation of the covenant inserted in the deed. It will be perceived, that according to the view taken, there has been a neglect or refusal to pay, and consequently the question is narrowed down to this : whether it was also necessary to have shewn the further fact, that the grantor had been put to costs, trouble or expense ? If this be indispensable, there has been no forfeiture ; for it is not alleged, that a demand of any kind was ever made on the father. In courts of law, it is a well settled rule in the construction of covenants of this description, to lean against that interpretation which creates a forfeiture, if admissible from the words of the instrument. To give effect to this rule, the whole instrument must be considered, as well as the particular clause relied on. *On looking at the deed, it is evident* the grantor intended that the grantee should hold the estate, if he paid the debts and supported the grantor in the manner stipulated. On the supposition that the word " *and*" is to be understood as a copulative, and not a disjunctive, then it follows, that in addition to the neglect or refusal to pay, the grantor must have been put to costs, trouble and expense. This part of the condition was probably inserted, to guard against the anxiety and vexation that a law suit might occasion to a person enfeebled by age and infirmities. If it be so, this part seems to apply to the grantor personally, and for his protection merely, and therefore ceased to operate after his death. His representatives do not appear to be within

its provisions; that is, it cannot be construed so as to require that they, also, should be put to costs, before the question of forfeiture can arise. If, then, after the death of the grantor, this clause no longer formed a part of the condition, what is its effect as to the residue? Is the residue of the condition of no avail, so that the grantee holds the estate absolutely, and nothing remains but a covenant to pay the debts? This interpretation would annul, what, to say the least, was declared to be a part of the condition upon which the estate was to depend. I incline to the opinion, that in order to give effect to the whole, the construction is this, that to create a forfeiture during the life of the grantor, two contingencies must happen; 1. There must be a neglect or refusal to pay, and, 2. The grantor must be put to cost. After the death of the grantor, the latter event becoming impossible, the former condition alone remained; and, consequently, on its being shew that the grantee neglected, or refused to pay, the heirs of the grantor were entitled to enter. During the life of the grantor, it will be admitted, that one of the contingencies singly would give no right of action: both must concur. From this view of the subject it follows, that as the condition guards against costs, and at the death of the grantor the other only remained in force, and there being a breach as to that, the plaintiff is entitled to recover.

But if I am in error as to the construction given, then the question arises, whether the word "*and*" is not used in the sense of "*or*," thus putting the forfeiture on either of these grounds, viz. refusal to pay, or being put to costs, or in not affording a maintenance. It is well settled at the present day, although for a long time a *vexata questio* in England, that the grammatical sense is not to be adhered to, either in a will or deed, where a contrary intent is apparent. The case of *Jackson* v. *Blanchan*, (6 *Johns. R.* 54,) where the authorities are reviewed, seems to be decisive on this point. The case arose on a will, but the authorities cited shew that the principle applies equally to deeds. In *Wright* v. *Kemp*, (3 *D. & E.* 470,) the question came up on a surrender of copyhold premises. Lord Kenyon observed, that in deeds,

certain legal phrases must be used, to create certain estates, but beyond that he would say with Lord Hardwicke, that there is no magic in particular words, further than as they show the intention of the parties. Ashurst, justice, says, "We must collect the intention of the parties in deeds, as well as in wills, to give effect to which, the word 'or' may in both cases be equally construed into 'and.'" There being, then, no doubt that the word "and" is not confined to the grammatical sense, but may be read as "or," so as to put the right of entry in the disjunctive, it only remains to consider whether the plain intent of the grantor was not, that it should be so considered. I think this is manifest from the whole instrument. The recital shows the moving cause, that the debts should be honestly paid, and the grantor maintained. To enable the grantee to do this, the grantor parts with his whole estate, upon condition ; or, in other words, he was willing the grantee should enjoy, provided he would pay the debts and maintain him. Is it not evident, that the grantor intended to secure this object with absolute certainty? and if so, that intent might be defeated by following the grammatical sense. Suppose a creditor, holding a promissory note against the grantor, given five years before the execution of the deed : he reposes in confidence until after six years had elapsed, and then calls on the grantor, who, on request, refuses to pay. The creditor concludes not to prosecute, and his debt remains indefinitely unpaid. According to the doctrine contended for, here would be no forfeiture, and yet it cannot be doubted, that it never was the intention, in such a case, that the grantor should not be at liberty to enter for condition broken. Suppose, further, that there were a number of debts known to the grantee, and admitted as valid ; they apply for payment ; it is refused, and yet they omit to prosecute for years ; did the grantor imagine that, in such an event, there would be no forfeiture? If so, provided there were no costs incurred, he would be obliged to see his creditors unpaid, and yet without the power to resume his estate ; and that, too, notwithstanding the consideration was expressly that the grantee should pay. Not satisfied to rely on a covenant of the gran-

ALBANY,
Oct. 1828.

tee to pay, he proeeeds to convey the estate upon condition. It cannot reasonably be supposed that this primary object was intended to be impaired, by annexing the unimportant fact that costs must also accrue, but rather, that so particular and jealous was he to insure speedy justice to his creditors, and save himself from all disquietude on the subject, he adds a further condition, that no costs or expense be made. This, I understand, on a fair construction of the deed, to be of itself sufficient, and consequently subjecting the estate to forfeiture, on the breach of either condition.

In this view of the subject, the plaintiff is entitled to judgment.