ELIZA CRUGER, Respondent, *v.* EDWARD T. McLAURY, Appellant.

One, who claims as one of six children, the heirs of the owner of a rent charge, with a condition of re-entry, upon premises leased in fee, subject to such rent charge and condition of re-entry, may, upon non-payment of the rent, maintain an action of ejectment to recover one undivided sixth part of the demised premises.

Such action may be commenced without a common law demand of the rent having been first made, or a fifteen days notice of intention to re-enter under the act of 1846, having been served.

*Hosford* v. *Ballard* (39 N. Y., 147); and *Van Rensselaer* v. *Dennison* (35 N. Y., 393), referred to and approved.

Accordingly, where J. K., in 1789, leased in fee to the defendant's grantor the premises in question, reserving rent, with a condition of re-entry in case of non-payment, and died in 1810 intestate, leaving the plaintiff, (his daughter), and five other children, his heirs-at-law.—*Held*, unanimously, that she could recover of the defendant in ejectment, on non-payment of the rent, one undivided sixth part of the premises leased, and that the commencement of the action was a sufficient substitute for actual entry or the common law demand of rent.

(Cause submitted June 26, 1869, and decided September 27, 1869.)

THIS is an action of ejectment, brought by the plaintiff for the purpose of recovering the possession of an undivided one-sixth part of lot No. 68, containing one hundred and fifty acres in the Kortright Patent, Delaware county.

The plaintiff claimed an undivided one-sixth part of the premises, upon the ground that the defendant held them, or a portion of them, under a lease in fee, reserving an annual rent and the right to re-enter, in case of non-payment, from John Kortright, deceased, to Thomas McLaury, the grantor of the defendant, executed on the 9th day of October, 1789 ; that she was, before the commencement of this action, the owner in fee of an undivided one-sixth part of the said premises and lands, rents, issues and profits thereof, which came to her by deeds and conveyances duly made by and through the said John Kortright, his heirs and assigns.

The answer set up several defences, but as the plaintiff, at the trial, was non-suited upon her own evidence, none of them are material in this case.

The plaintiff, upon the trial, to prove title in herself, introduced a large amount of documentary and oral evidence, and established the fact that John Kortright died in 1810, intestate, leaving six children, his lawful heirs ; that he claimed to own about 22,000 acres of land in the towns of Kortright and Davenport, Delaware county.

The evidence showed that one Lawrence Kortright and twenty-one others, whose names were given, received a charter or grant from the crown of Great Britain, for the

above amount of land; that John Kortright took, by deed, Lawrence Kortright's interest in the whole patent, and subsequently, and about the year 1789, executed the lease in fee of the lot in question, to Thomas McLaury, reserving an annual rent of sixpence sterling per acre, after the first four years, with a clause of re-entry in case of failure to pay, there being no condition in the lease that the lessor should have the right to re-enter in case of a want of a sufficiency of goods and chattels whereon to distrain for the rent after failure to pay; that the defendant in this action is in possession of about forty-five acres of lot No. 68, under conveyances from Thomas McLaury, and that no rent had been paid since 1856; that the plaintiff in this action is one of the children of John Kortright, and at his death he left six children; that in 1824 the plaintiff married Nicholas Cruger, who, at the time of the trial, was living, and had living issue born to him of said marriage; that in 1861, Nicholas Cruger quit-claimed all his interest in the Kortright Patent to his son, Governeur Cruger, and in 1863, Governeur Cruger quit-claimed the same to his mother, the plaintiff.

At the close of the evidence on the part of the plaintiff, she was nonsuited, on the ground that the title to the other five-sixths of the alleged lease of the lot in question, was owned by persons not parties to the action. The General Term of the sixth district reversed the judgment and ordered a new trial. The defendant appeals to the court, stipulating that if the order be affirmed, judgment absolute may be rendered against him.

*William Gleason*, for appellant.

*Amasa J. Parker*, for respondent.

HUNT, Ch. J. Estates, like the one in question, have been frequently before this court, and their character, in many respects, is settled by adjudication. In 1859, the main questions upon such cases were examined by Judge Denio in an able and elaborate opinion. (*Van Rensselaer* v. *Hays*, 19

N. Y. R., 68.) This examination has been repeated by other judges, from time to time, ending with the well considered opinion of Judge WOODRUFF in March, 1868. (*Hosford* v. *Ballard*, 39 N. Y. R., 147; See *Van Rensselaer* v. *Dennison*, 35 N. Y. R., 393; *The Same* v. *Slingerland*, 26., 580; *The Same* v. *Ball*, 19 N. Y. R., 100.) The interest of Kortright was in the nature of real estate, and was descendible, devisable, and assignable. The reservation of the rent is valid, as a rent charge, although there is no reversion in the person entitled to it. The conveyance by Kortright, or a descent to his heirs, operates as an assignment, carrying all the interest in the rent, in the land, and in the causes of action, arising therefrom, to the heir or grantee. The covenants run with the land, binding the heir or assignee. In *Hosford* v. *Ballard*, it was decided, under a lease containing a condition, that if the rent remained unpaid, the grant and estate demised should be void, cease and determine, and thereupon it should be lawful for the grantor, his heirs and assigns, to re-enter, that it is not necessary for the plaintiff in ejectment, brought for the breach of such condition, to prove a demand of the rent; that the common law rule requiring such demand on the premises, on the day, and for the precise amount, is abrogated by the statute, which makes the commencement of the action of ejectment stand in the place of such demand, and that this statute applies as well to a grant in fee reserving rent, as to a lease for years; also, that the statute of 1846, requiring fifteen days notice of an intention to re-enter, does not apply to a grant, in which the right to re-enter arises on a default of payment by the tenant, but only where such right depends on the sufficiency of goods whereon to distrain.

The plaintiff was nonsuited, on the ground that the owner of an interest of one-sixth, in a case like the present, could not alone maintain his action of ejectment, that all the interests must be represented as plaintiffs. This position the appellant now maintains. The General Term of the sixth district set aside the nonsuit, holding that the action was maintainable. I do not regard the variance between the complaint and the

proof as material, in the form in which it is here presented. After alleging the title in John Kortright, his death, and the breach of the condition, the plaintiff averred, that by deeds and conveyances, duly made by and through Kortright, his heirs and assigns, she was the owner and holder of the one undivided sixth part of the premises, of the rents due and to grow due, and of the right of re-entry, with the conditions set forth. She did not place her claim on the ground, that she was one of the heirs of John Kortright, and that the descent was cast upon her by his death. On the trial, however, and without objection as to the form of the pleadings, she did take that position, and the case was tried and decided upon that theory. She made no proof of any deed or conveyance from John Kortright, but proved merely his death, and that she was one of his six children, all of whom survived him. The question of variance was thereby waived, and we are to look at the questions only, which were actually presented to the court below and there passed upon.

It is settled by authority, which cannot be questioned, that a rent charge cannot be apportioned by the act of the parties. (4 Coke, 119 *b.*, auth. below.)

It is scarcely disputed, on the other hand, that this rent charge, so far as to warrant an action of covenant for the rent, may be apportioned by force of the law. The death of the owner, and the descent by operation of law to several heirs, effects a transfer of title to each, and they hold as tenants in common. The rent due upon the lease becomes severed and, upon non-payment, each heir may maintain his several action of covenant, for the recovery of the portion of the rent belonging to him. (*Cole* v. *Patterson*, 25 Wend., 456; *Jackson* v. *Topping*, 1 Wend., 388; 3 Kent, 470 *n.*; *Jones* v. *Fitch*, 3 Bosw., 63; 1 Washb. on Real Prop., 384, 341; *Bowen* v. *Bowen*, 18 Conn. R., 535.)

This subject was regulated by the statutes of this State at an early day (1 R. L., 363), and it is provided by the Revised Statutes of 1830, that "the grantees of any demised lands, tenements, *rents* or other hereditaments, or of the reversion

thereof, the assignees of the lessor of any demise, and the heirs and personal representatives of the lessor, grantee or assignee, shall have the same remedies by entry, action, distress or otherwise, for the non-performance of any agreement contained in the lease so assigned; or for the recovery of any rent, or for the doing of any waste or other cause of forfeiture, as their grantor or lessor had, or might have had, if such reversion had remained in such lessor or grantor." (1 R. S., 747 *n*.)

In the words of Judge DENIO, in *Van Rensselaer* v. *Hayes* (*supra*, p. 83): "Reading the language in connection, the enactment, in terms, is that the grantee of rents, reserved upon grants in fee, shall have the same remedy, which his grantor had." This statute applies as well to grants or leases in fee reserving rents, as to leases for life or years. (Ib., 1 R. S., 748, § 25, *n*. 1.)

The defendant insists that the right to maintain this action is regulated by another provision of the statute (1 R. S., 505, § 33), which enacts that, "whenever any half-year's rent or more shall be in arrear from any tenant to his landlord, and no sufficient distress can be found on the premises to satisfy the rent due, if the landlord has a subsisting right, by law, to re-enter for the non-payment of such rent, he may bring an action of ejectment for the recovery of the possession of the demised premises, &c." Under this statute, he insists that "the landlord" means the person holding the whole interest, and not a party claiming a sixth of the whole interest in the lease. The expression "recovery of the demised premises," he contends, means the whole of them, and not a fractional part.

The law is established upon authority, that by the demise of the landlord, leaving several heirs, the rent becomes severed, and each heir may maintain an action upon the covenant to recover the portion of the rent due him. (Auth. *supra*.) This is the law, under our decisions, as to grants in fee reserving rents. (Ib.) Is there such a distinction as the defendant urges, viz., that this rule applies to actions for the recovery of the rent only, and not to actions of ejectment to recover the demised

premises? That an action of covenant for rent may be brought, but an action of ejectment cannot be?

In Coke upon Littleton (215 *a*), the rule is laid down, that "where a statute speaks of grantees and assignees of the reversion, an assignee of part of the state of the reversion may take advantage of the condition, as if there be a lessee for life or years, and the reversion is granted for life or for years, the grantee shall take the benefit of the condition; but that a grantee of a part of the reversion shall not take advantage of the condition, as if lease be of three acres, reserving a rent upon condition, and the reversion is granted of two acres, the rent shall be apportioned by the act of the parties, but *the condition* is destroyed, for that it is entire and against common right." (2 Co. on Lit., Thomas ed. 1827, p. 89, 90 m.)

In a note to subdivision twelve, on the page following, the doctrine is thus laid down in note 130: "On the other hand, the grantee of the whole estate in reversion in part, is not an assignee under the 32 Hen., 8; as if the reversioner in fee of four acres, grants two acres in fee, the grantee cannot enter; which, also, is very different in the case of warranty, for the feoffee of two acres is an assignee for voucher. (Infra. 315 *a*, Lord Nott. MSS.")

In *Wright* v. *Burroughs* (3 M., G. and Scott, 685), 54 E. C. L., the subject is discussed, and the rule as above laid down is affirmed. The sections from Littleton and Coke are cited, and MAULE, J., concludes thus: "The main point attempted to be discussed in this case, has already been expressly decided by *Matures* v. *Westwood*, *Chaworth* v. *Phillips*, and the passages cited from Co. Lit., 215. They establish that the grantee of a *part of the reversion* is an assignee within the statute 32 H., 8 c., 34, but that the grantee of the *whole reversion in part of the thing demised*, is not."

These authorities tend strongly to establish the position, that a condition cannot be apportioned by the act of the grantor. They do not, however, decide that it cannot be done by the act of the law. As already shown, this distinction is well established in the case of a rent charge. It cannot be

severed by the act of the party; by force of the law it may be. "A condition cannot be apportioned by the act of the parties; but it may be apportioned by act of law or by the act and wrong of the lessee." (4 Co. R., 119 b., 120 b.; 2 vol. Co. R., p. 558, London ed. of 1826.) I find the same distinction laid down in Smith on Real and Personal Property. After stating that by the common law, grantees and assignees of the reversion could not enter for condition broken, he adds; "But by statute 32, Hen. 8, ch. 34, grantees and assignees of the reversion may enter for breach in their time of conditions, for payment of rent or performance of some act beneficial to the estate, but not of collateral conditions. And by the same statute, a grantee of part of the estate of the reversion may take advantage of a condition. But a grantee of part of the land in which the reversion subsists, cannot, because a condition being entire, cannot be apportioned by the act of the grantor, although it may be apportioned by act of law or by the wrongful act of the lessee." (Smith on Real and Personal Property, 55 n.; 89 Law Lib., p. 76.) In the case of a descent cast upon several heirs, the apportionment takes place by force of the law.

I am of the opinion that such is the law of the present case, and that the construction which limits the benefit of the statute to the owner of all the property leased, is too narrow. Its language doubtless gives the right to the landlord, as it does in case of the right to demand and recover the rent by an action of covenant. It is not unreasonable to say, that by the descent, each heir becomes the landlord of the portion of the estate which descends to him, and thus comes within the words of the statute. The cases of *Jackson* v. *Topping* (1 Wend., 388), and of *Cole* v. *Patterson* (25 Wend., 456), to some extent sustain this position. They were both cases of ejectment, brought by an heir to recover a several portion of the estate for condition broken, and contained the precise question before us. It was not, however, presented by the counsel, and the force of the cases as authority is thereby much impaired.

It is not to be denied, that some theoretical confusion, and some complication of interests may arise from this view of the case, as in an equal degree it might arise in the case of a severance of rents. A wise administration of justice will, however, render the difficulty of little practical importance.

The defendant further objects to the recovery on the ground, that there was no averment or evidence of an actual ouster by one tenant in common of the other, and neither a demand or refusal of possession. The defendant specified five objections to the recovery, and this was not among them. It cannot now be argued. (*Binse* v. *Wood*, 37 N. Y., 526.) We are not called upon to consider it here.

The other questions raised upon the briefs have been settled in the cases formerly decided, and we are of the opinion, that the judgment of the General Term should be affirmed, and judgment absolute be rendered for the plaintiff for the premises described in the complaint, with costs.

LOTT, J., also read an opinion for affirmance, approving that delivered at the General Term.

All the judges concurring for affirmance, except MURRAY, J., who having been of counsel did not vote.

Order affirmed, and judgment absolute for the plaintiff for the recovery of the premises.

NOTE.—By chapter 396 of the Laws of 1860, the 25th section of the second part, chapter 1, title 4, of the Revised Statutes (1 R. S., 748, § 25), referred to in the above opinion of the chief judge, was repealed, so far as it applied to "deeds of conveyance in fee made before the 9th of April, 1805." The object of this repeal was, at one time, supposed to have been, to take from the Van Rensselaer leases their capability of being assigned so as to give to the assignees the rights of re-entry for condition broken, and thereby to destroy substantially the remedies of the then owners of those rent charges, the sons and *devisees* of the original lessor. That purpose, however, entirely failed, as the right of the assignee to re-enter for condition broken, where rent had been reserved, notwithstanding such repeal, was upheld in the subsequent cases of *Van Rensselaer* v. *Slingerland* (26 N. Y., 580); *Van Rensselaer* v. *Dennison* (35 N. Y., 393); *Van Rensselaer* v. *Barringer* (39 N. Y., 9); *Hosford* v. *Ballard* (id., 147).

In these cases, it was held, that the assignability of the right of re-entry was distinctly recognized in the act of 1846 abolishing distress for rent, and that act had in no way been affected by the act of 1860.

There are other pretty strong grounds for upholding the assignability of every species of real property (except perhaps, a mere naked condition unaccompanied with any interest whatever, as in *Nicoll* v. *Erie R. R.*, 2 Kern., 121), in this State.

As to leases in fee, the act of 1805, a re-enactment substantially from chapter 34 of 32 Henry, viii, and the Revised Statutes (§ 25, page 748), expressly give to the assignees of them all the advantages by *entry* for non-payment of rent that their assignors had. And the language of the act of 1860, that such acts " shall not apply to deeds of conveyance in fee," could not perhaps be construed to include *leases* in fee reserving rent. Again, by the 2d section of chapter 6, title 1, part 2 of the Revised Statutes (2 R. S., 57, § 2), every " *estate* or *interest* in real property descendible to heirs may be *devised*." And a rent charge, with a condition of re-entry, has been uniformly held to be " *real property*." (See 26 N. Y., 566 ; Co. Litt., 6 a, 20 a, 29 a, 30 a ; Cruise Dig. Rents, chapter 2, section 2 ; Crabb on Real Property, 187, 188, 189 ; *Doctor* v. *Student*, chapter 30, Dialogue 1 ; 2 Johns. Ca., 26 ; 3 Kent, 460 ; 2 Ves. Jr., 663 ; 7 Rep., 39 ; 7 Wend., 463 ; 1 R. S., 750, § 10 ; Id., 755, § 27.) And by the Revised Laws (never repealed in this respect), any person having an estate of inheritance in any lands, tenements, or hereditaments may, at his own free will and pleasure, *give* or devise the same (1 R. L., 364, § 1) ; Revisor's Notes, to R. S., 5 Statutes at Large, 365), and that a condition of re-entry was an *inheritance* and descended to the heir, was held in *Jemmott* v. *Cooley*, (1 Lev., 170).

The alienability of every species of interest in lands is also, in terms, enacted in section 10, part 11, chapter 1, title 1., article 2d of the Revised Statutes (1 R. S., 719, § 10), and by section 10 (p. 750), the word " lands " used in that chapter, is defined to include lands, tenements, and hereditaments.

Indeed, it seems that even contingent remainders are alienable. (*Moore* v. *Littell, ante* p. 66.)—REP.