Robert E. Noonan, J.
This is a motion made on behalf of the plaintiffs, seeking summary judgment. In the action itself only the defendants Haehn, Weinstein, Wallace, Niagara Mohawk Power Corporation, Marine Midland Trust Company of New York, and City Bank Farmers Trust Company have answered. The defendant Jamestown, Westfield and Northwestern Railroad Company has appeared but has not answered. None of the answering defendants has responded to this motion for summary judgment except the defendants, Haehn, Wein-stein and Wallace. These defendants not only resist the motion *782 made on behalf of the plaintiffs but also cross-move for summary judgment. The plaintiffs also move to discontinue the action as to plaintiff Frank B. Walton, who has died since its commencement. No problem exists with respect to this phase, since plaintiff Frank B. Walton claims title to certain real property with plaintiff Dorothy M. Walton, his surviving tenant by the entirety.
The action itself and this motion and cross motion involve the title to certain real property in the township of Ellery, in the County of Chautauqua, which is described as being “ sixty-six feet in width and about seventeen hundred feet in length,” and is situate near the shore of Chautauqua Lake. There are no questions of fact in dispute since the claim of title to this property on behalf of all of the parties depends upon documentary proof.
The premises in question were conveyed by Amasa I. Starr and Huldah E. Starr to the Jamestown and Lake Erie Bailway Company by deed dated January 19, 1897 and recorded in the Chautauqua County Clerk’s office on March 18, 1899 in Liber 277 of Deeds at page 304. In addition to the usual provisions, this deed contained the following: “ Said second party hereby agrees to and with said first parties that in case said Bailway shall at anytime be abandoned, then the lands heretofore described shall revert to the grantors, the said second party furthermore agrees to construct two road crossings with suitable approaches and cattle guards at points to be designated by said first parties and also to fence both sides of the right-of-way through the above described lands, said second party also agrees to have a flag station on the lands above mentioned at or near the south line of the lands of said first parties with a covered platform; said second party also agrees to give to said first parties life passes on said Bailway ”. At the time of the giving of this deed the railroad was then operating and had been operated by the grantee or its predecessors in interest, for about 10 years. The grantee executed two mortgages on the premises, one of which was later foreclosed and by referee’s deed the property involved in this litigation as well as other land was conveyed to Samuel B. Bertron and Bichard S. Storrs. They, in turn, subsequently conveyed the property to the Jamestown and Chautauqua Bailway Company. That company executed a mortgage to the Continental Trust Company, which mortgage was also subsequently foreclosed. In that foreclosure action George Bullock was appointed receiver. Prior to the foreclosure and to the appointment of that receiver the Treasurer of the County of Chautauqua executed a tax deed to the *783 property which is the subject of this litigation as well as other property to the supervisors of Chautauqua County. This tax deed followed a tax sale which had occurred on October 23, 1909, and was dated October 24, 1911 and recorded in the Chautauqua County Clerk’s office in Liber 340 of Deeds at page 246 on April 13,1912. The Board of Supervisors of Chautauqua County executed a quitclaim deed dated February 29, 1912 and recorded in the Chautauqua County Clerk’s office in Liber 354 of Deeds at page 614 on April 13, 1912, running to George Bullock, as receiver. Pursuant to the judgment of foreclosure on behalf of the Continental Trust Company, a deed was executed by the referee designated in favor of Morton G. Bogue. Bullock, as receiver, likewise executed a deed to Bogue. Ultimately the property was transferred to the Jamestown, West-field and Northwestern Railroad Company, which continued to operate as a railroad until 1950, at which time all tracts, ties, and other equipment were removed from the land. Thereafter that railroad deeded all of its real property, including the land in question, to the defendants Weinstein, Haehn, and Rogerson, and through this deed and subsequent deeds to defendants who resist this motion, title is claimed. On February 3, 1912 George Bullock, receiver, paid certain moneys to the Treasurer of the County of Chautauqua, which are referable in one way or another to the taxes due the county which resulted in the sale in 1909.
On September 1, 1906, Huldah E. Starr, then the widow of Amasa, deeded in warranty form to James Ward Packard the entire farm of 100 acres described by metes and bounds and including the property involved in this litigation. That deed contained two exceptions of parcels previously deeded but not including the property involved in this litigation, and following these exceptions were these words: “ This transfer is subject also to a conveyance made by Amasa I. Starr and Huldah E. Starr, his wife, to the Jamestown and Lake Erie R. R. Co., recorded in Liber 277 of deeds, at page 304 ”. Under date of September 2, 1955, Ernest Starr, one of the three heirs of Amasa and Huldah Starr, executed a deed to Frank R. Walton and Dorothy M. Walton to a portion of the property which is the subject of this litigation.
Thus, we have for determination the claims of the plaintiffs to title to the real property as heirs and the grantee of an heir of the original grantors, Amasa and Huldah Starr, on the one hand, and the claims of the defendants, who resist the plaintiffs’ motion and likewise seek affirmative relief, to the title to the same property, as alleged grantees of the successor railroad. *784 The claims and contentions of these parties give rise to several questions of law. Each of the questions will be considered separately.
The first problem to be determined is the type of estate, if any, which was created by the deed given by Amasa I. Starr and Huldah, his wife, to the Jamestown and Lake Erie Railway Company. The defendants contend that the language of this grant created no estate but reserved only to the grantors themselves the personal right to retake title to the premises in the event that the railroad was abandoned during their lifetime and secondarily the defendants contend that even, if an estate was created which was more than personal to the grantors, it was at most a condition subsequent which required a re-entry of the premises, in the event that the railroad was abandoned. The plaintiffs contend that the conveyance created a fee on limitation, sometimes referred to as a defeasible or qualified fee, and that on the abandonment of the railroad title to the property reverted by operation of law to the heirs of the grantors by representation, i.e., that the heirs represented the original rights of the grantors. The language of the deed: “ in case said Railway shall at anytime be abandoned ” (emphasis supplied) leads to the conclusion that the grantors were not seeking a personal right but were looking to the future. (Jackson v. Topping, 1 Wend. 388, 395.) The law is settled that when a defeasible or qualified fee, i.e., a fee on limitation, is created, then with the occurrence of the event title reverts by operation of law to the grantor or his heirs. (Lyon v. Hersey, 103 N. Y. 264, 269; Gillespie v. Broas, 23 Barb. 370, 376; Thypin v. Magner, 28 N. Y. S. 2d 262; Gorton v. Wager, 149 N. Y. S. 2d 887, 891; 3 Walsh on Law of Real Property, § 283; 33 Am. Jur., Life Estates, Remainders, etc., § 206, p. 684.) It is equally clear that where a condition subsequent is created then the reversion of title does not occur unless and until the heirs of the grantor re-enter the premises or otherwise assert their rights to title. (Fowler v. Coates, 201 N. Y. 257, 263; Vail v. Long Is. R. R. Co., 106 N. Y. 283, 287; Nicoll v. New York & Erie R. R. Co., 12 N. Y. 121, 131; City of New York v. Coney Is. Fire Dept., 259 App. Div. 286, 289, affd. 285 N. Y. 535; Carruthers v. Spaulding, 242 App. Div. 412.) It is conceded in this proceeding that the plaintiffs have re-entered and have asserted their rights to title to the premises. If the only problem involved was to determine the type of estate created by this original deed, it would not be necessary to make that determination because of the re-entry of the plaintiffs. There are, however, other contentions upon which such a determi *785 nation has a bearing. Case law does not make a clear-cut distinction between fees on limitation and conditions subsequent. Indeed, it appears that the terms are frequently used loosely and interexchanged. The line defining the difference between these two types of estates is fine indeed, although it would seem that the courts are more consistent in defining an estate as a condition subsequent where the grantee is charged with doing an affirmative act, such as, erecting a building and fails to do so. This too is consistent with the very name given to fee on limitation, which would seem to imply the granting of a fee absolute limited only by the occurrence of an event, which might happen in the future, but is not definitely anticipated. This court feels that the language of the original deed, considering all the circumstances and conditions, is more consistent with a finding that a fee on limitation was created rather than a condition subsequent. While the defendants make some reference to the possibility of the creation of a conditional limitation by this deed, and the application of the rule against the creation of perpetuities applying, a careful reading of the briefs submitted on their behalf shows that this is not seriously contended. Indeed, there can be no question but that the estate created was not a conditional limitation, since such an estate is created for the benefit of named third parties, which is not this case.
The defendants further contend that the failure to use the terms ‘1 heirs ’ ’ is fatal to the creation of an estate on limitation or one with a condition subsequent and that at common law this term was essential. It is not necessary for this court to determine whether or not the deed in question and the estate created thereby is governed by statute, for even at common law the fundamental question was the intention of the grantor as to whether or not the estate created was personal and, since it has been determined that this was not a personal estate created, the common-law rule in this type of estate seems to be clear that the use of the term “heir” is unnecessary. (Jackson v. Topping, 1 Wend. 388, supra.)
The defendants further urge that the deed from Huldah Starr, the widow of Amasa, to Packard destroyed any right of reverter or re-entry on the part of the heirs of the grantor and that that deed, which was made subject to the prior grant to the railroad, intended to transfer the inchoate right of Huldah Starr of either reverter or re-entry. Even though the possible right of re-entry in a condition subsequent is not an interest in real property, or an estate which is capable of conveyance, the law is well settled, that, if the original grantor or all of his heirs attempt to deed the right of re-entry before the *786 occurrence of the event the right is extinguished and the original grantee, or his successors in interest, have a fee absolute. (Berenbroick v. St. Luke’s Hosp., 23 App. Div. 339, 343, motion for leave to appeal dismissed 155 N. Y. 655; Underhill v. Saratoga Washington R. R. Co., 20 Barb. 455; Tinkham v. Erie R. R. Co., 53 Barb. 393; O’Connor v. City of Saratoga Springs, 146 Misc. 892; Rice v. Boston & Worcester R. R. Corp., 12 Allen [94 Mass.] 141, 143.)
The foregoing rule of law does not appear to be applicable to such a conveyance of the possible right of reverter in a fee on limitation (Ann. 53 A. L. R. 2d 224, cases p. 263) but in any event defendants’ contention in this respect is not important under the facts of this case.
Since the original railroad grantee received from Amasa and Huldah Starr the absolute fee to the premises, subject only to the limitation, Huldah Starr, after the death of Amasa, could not by her deed extinguish the right of reverter because it was then owned not only by her but also by the heirs of Amasa; nor can the conveyance, simply because it was made subject to the prior conveyance to the railroad, be interpreted as an attempt to convey a right of reverter. It seems obvious that this deed was made subject to the prior conveyance to the railroad only to apprise the grantee, Packard, of the existence of that deed and not for the purpose of creating- any affirmative right in him. Therefore, this deed to Packard did not extinguish or destroy the right of reverter owned by the heirs of Amasa.
The defendants next argue that the deed from Ernest Starr to Walton destroyed and extinguished any rights which the plaintiffs might have. Where the estate is a condition subsequent the law is clear that a conveyance by the grantor or all his heirs made after the occurrence of the condition but before re-entry operates to destroy the right of re-entry. (Fowler v. Coates, 201 N. Y. 257, supra; Upington v. Corrigan, 151 N. Y. 143, 151; Towle v. Remsen, 70 N. Y. 303, 312-313; Southwick v. New York Christian Missionary Soc., 151 App. Div. 116, affd. 211 N. Y. 515; Underhill v. Saratoga & Washington R. R. Co., 20 Barb. 455, 463-464, supra; Brown Co. v. Ontario Co., 123 N. Y. S. 2d 546, 560.) In a fee on limitation, however, this is not the rule, since on the occurrence of the event title vests in the grantor or his heirs by operation of law. Thus, it follows that a deed after the occurrence of the event in a fee on limitation transfers the interest of the deeding party in the title already reverted. In any event, with respect to this argument of the defendants, one heir could not destroy the right of re-entry of other heirs. (Southwick v. New York Christian Missionary Soc., 151 App. *787 Div. 116, 121, affd. 211 N. Y. 515.) His act in deeding would destroy only Ms own right, leaving to the other heirs their rights of re-entry as well as his own. Since it is already determined that the original deed created a fee on limitation, it follows that the deed from Starr to Walton transferred an undivided one-third interest in the title which the heirs of Amasa and Huldah Starr owned.
The next problem to be considered is whether the deed from the Board of Supervisors to the receiver, Bullock, was actually a tax deed or had Bullock redeemed the property by the payment of back taxes. The defendants contend that a tax deed Avas given and thus a new title created which effectively cut off any right of re-entry or reversion which the plaintiffs might have had. The plaintiffs, on the other hand, urge that the documentary facts establish the the receiver, Bullock, actually redeemed the property, thereby keeping alive any rights which they or their predecessors in interest had. It is argued that in determining tMs problem it must first be decided whether a special act with respect to taxation applying to Chautauqua County controls or whether this special act was superseded by a general act affecting tax sales. (L. 1879, ch. 229, §§ 13, 26, as amd. by L. 1900, ch. 304; Cons. Laws of 1909, Tax Law, §§ 127,137.) Before determining this problem a decision should be made as to whether the documented' facts establish a tax sale or a redemption. A most compelling fact is that the County Treasurer’s records establish that the receiver paid in the exact amount due on the taxes plus penalties and other charges. While these records also indicate that there was a so-called purchase-price refund, there is no indication that such a refund was made to the receiver, but rather this record is capable of the more intelligent interpretation that the refund figure applied to the purchase made by the supervisors. Nor is there anything probative in the fact that the actual deed to the superAdsors contained a consideration precisely $200 less than the correct amount. This was obviously a typographical error. This court, therefore, concludes that there was an actual redemption of the property by the receiver, which left the then OAvner of the premises and predecessors in interest exactly where they were before and did not cut off any right of reverter or re-entry. (See Matter of Blatnicky v. Ciancimino, 206 Misc. 916, affd. 1 A D 2d 383, affd. 2 N Y 2d 943.)
Whether the general Tax Law superseded the special act affecting Chautauqua County depends on whether the special act was a complete tax program from assessment to sale as in Fulton v. Krull (200 N. Y. 105) or was a fragmentary enact *788 ment as in Peterson v. Martino (210 N. Y. 412). From a careful reading of the special act, this court is of the opinion that it was a complete taxing program from assessment to sale and, therefore, was not superseded by the general law. This determination is not essential, however, because it has been concluded that there was a redemption. A study of both the special act and the general law and the facts of this particular litigation disclose that the redemption occurred within the period prescribed either under the special act or the general law since the grantee Board of Supervisors and thus those claiming under it had not filed a notice of redemption as required. Under these circumstances, the receiver had four years to redeem under the special act and three years under section 137 of the general Tax Law. The defendants urge that, if it is determined that a redemption occurred, it may be attacked because the receiver did not file evidence of occupancy. Since either the railroad itself or Bullock, as receiver, were always occupants of the premises during the period, this court does not feel that such a technical matter should defeat the redeemer and the redemption and create a tax title in favor of the grantee, who likewise, from the documentary proof, had not complied with that portion of the law which requires the giving of notice to redeem to the occupant and recording the same with the tax deed.
While the rule is clear that, had there been a valid tax sale, a new and complete title would have been created, cutting off all claims including the possibility of reverter or re-entry, this question need not be reached because of the determination that there had been an actual redemption. It follows, therefore, from this determination, that there was no valid sale or deed to the Board of Supervisors and thus the deed from the Board of Supervisors to Bullock, as receiver, likewise falls.
Similarily it is not necessary to reach the question raised by the plaintiffs of the right of Bullock, as receiver, to purchase the title, since it has been concluded that a redemption occurred.
The defendants assert title by adverse possession. Obviously this argument has no merit since the plaintiffs did not have a right of possession until 1950.
The plaintiffs’ motion for summary judgment is, therefore, granted, together with the motion to discontinue the action as to plaintiff Frank R. Walton, and the cross motion for summary judgment made by the defendants is denied, with costs.
Submit order accordingly.